## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | |
|---|---|
| **JOYCE COOPER and RONALD COOPER**, | |
| **Plaintiffs,** | **Civil Action File No.** |
| **v.** | _____ |
| **BRUNSWICK HOUSING AUTHORITY,** | **JURY DEMAND** |
| **Defendant.** | |

## COMPLAINT

COME NOW Plaintiffs Joyce Cooper ("Mrs. Cooper") and Ronald Cooper ("Mr. Cooper") (collectively "the Coopers" or "Plaintiffs"), by and through their undersigned counsel, and file this Complaint against Brunswick Housing Authority ("BHA" or "Defendant") and show this Court as follows:

### STATEMENT OF CLAIMS, JURISDICTION AND VENUE

1.

This is a claim for violations of 42 U.S.C. § 1981 through 42 U.S.C. §1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

2.

This is a renewal action. The previous action involved the same parties and

the same claims. The prior action was filed within the applicable statute of limitations. The previous action was dismissed *without prejudice* after payment of all costs and fees. This action is renewed pursuant to O.C.G.A. § 9-2-61.

2.

The United States District Court for the Southern District of Georgia, Brunswick Division, has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this matter involves federal questions under § 1981, § 1983, and the United States Constitution.

3.

Venue is proper in the United States District Court for the Southern District of Georgia, Brunswick Division pursuant to 28 U.S.C. § 1391 because the acts, events, and occurrences giving rise to Plaintiffs' claims took place in Glynn County, Georgia, which is within this judicial district and division.

**THE PARTIES**

4.

BHA is a public housing authority serving the City of Brunswick, Georgia. BHA may be served through its Executive Director, Christopher Baisden, at 1126 Albany Street, Brunswick, Georgia 31520.

5.

The Coopers are former employees of BHA.

6.

Both Mr. and Mrs. Cooper are white.

## FACTUAL BACKGROUND

7.

BHA hired Mrs. Cooper on March 13, 2015, as Admissions Counselor for Section 8 and Public Housing.  Between 2019 and 2021, Mrs. Cooper held various positions including Property Management, IT, and Office Receptionist and Administrative Assistant.

8.

In July 2022, BHA promoted Mrs. Cooper to Director of Housing, which was a role she remained in until October 3, 2022.

9.

BHA hired Mr. Cooper on July 15, 2022 as the Director of Safety and Security. Prior to joining BHA, Mr. Cooper served as a police officer for the Glynn County Police Department.

10.

Besides Mr. Cooper, few, if any, white employees were hired by BHA between 2022 and 2023.

11.

Beginning in 2022, the Coopers' co-workers, including members of

management, regularly made harassing and discriminatory comments based upon race/color.

12.

On or about July 5, 2022, the BHA Board of Commissioners ("the Board") appointed William Baker, who is Black, as the Interim Executive Director for BHA.

13.

Baker's responsibilities in his job description included administering, managing, planning, and directing BHA's programs and ensuring that BHA received at least a satisfactory concerning HUD agency scoring systems such as Public Housing Assessment System (PHAS) and Section 8 Management Assessment Program (SEMAP).

14.

Immediately after accepting his position as Executive Director, Baker began to foster a hostile environment based on race.

15.

In early July 2022, Baker relocated three Caucasian directors, including Mrs. Cooper, to window-less offices located at the back of BHA's building. The assistants of each of these directors, which are all Black, were relocated to their former offices, which were at the front of BHA's building. In making this decision, Baker stated that he needed his Black employees in plain view.

16.

Beginning on July 13, 2022, Baker frequently commented, in the presence of and within the hearing of other employees, including Mr. Cooper, that he would take care of "his culture," implying that he would favor Black employees over White employees.

17.

Baker restructured BHA by hiring many people and creating positions, offering large salaries and sign-on bonuses. He also attempted and, upon information and belief, was successful in unlawfully taking commissions from the grants and employees he brought to work at BHA.

18.

In furtherance of these efforts, Baker strongly encouraged the approval of BHA requests for proposal ("RFP") for Black or African American led companies, including the Brooks Law Firm, P.C. and KBK Consulting Group ("KBK").

19.

Kevin Kimble, KBK's principal, is also the CEO of the Financial Services Innovation Coalition ("FSIC"), a group seeking to provide a stimulus to African American owned businesses, led non-profits, and historically Black Colleges, and predominately African American municipalities through its Marshall Plan for the Economic Recovery of Black America ("the Marshall Plan"). Charles Brooks and

Hycall Brooks, who are the sole attorneys for the Brooks Law Firm, and Baker each signed a declaration to demonstrate their support for the Marshall Plan.

20.

Furthermore, Baker hired several other friends and associates, many of whom, like Baker, were members of Omega Psi Phi Fraternity, Inc., a historically Black fraternity.

21.

Baker's prejudices were shared with several of the Board's commissioners.

22.

During a September 14, 2022 public meeting of the Board, Mr. Cooper and Officer Shaniqua Wright, a Black police officer who provided security for BHA, presented separate updates on crime statistics for BHA's properties.

23.

While BHA Commissioner Kitts, who is Black, praised Wright for her police work, Commissioners Bailey and Sorrells, who are also Black, ridiculed Mr. Cooper and without evidence to the contrary, questioned him about the accuracy of facts provided in his presentation and his interactions with BHA residents.

24.

Soon after ridiculing Mr. Cooper, Commissioner Sorrells asked everyone in attendance to think about what it "might look and feel like for a community of

color" to be secured by white people and to evaluate if Mr. Cooper's presence created the perception of a lack of safety and fear. Sorrells later asked the room if it is positive for the BHA residents to feel as if they are being watched by Mr. Cooper, a negative reference to Mr. Cooper's race.

25.

Throughout this conversation, Mr. Cooper was referred to as the "white man" and Mrs. Cooper was referred to as the "white lady."

26.

None of the other BHA commissioners objected to or questioned these statements. Commissioner Bailey encouraged that Mr. Cooper be walked around BHA and introduced to diminish any fears because of his skin color. No other employees were ever instructed to go door to door to introduce themselves except for the Coopers.

27.

While hearing these comments, Mrs. Cooper became so upset that she had to excuse herself from the meeting.

28.

On September 16, 2022, Mr. Cooper notified Human Resource Director Jammie Howes of these racially insensitive remarks and filed a formal complaint to Human Resources on behalf of himself and Mrs. Cooper.

29.

On September 19, 2022, Mr. Cooper filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on behalf of himself and Mrs. Cooper.  The Coopers filed a collective Amended Charge of Discrimination with the EEOC on April 1, 2023. The Coopers later filed separate Charges of Discrimination at the request of the EEOC.  The final versions are attached hereto collectively as Exhibit A.

30.

On September 26, 2022, BHA retained Catherine Bowman to investigate Mr. Cooper's complaint about the September 14, 2022 Board meeting.

31.

On October 3, 2022, two BHA residents told Mr. Cooper that Officer Wright told them that Mr. Cooper was no longer law enforcement and could be ignored. When Mr. Cooper brought this to the attention of Baker and BHA Attorneys Charles Brooks and Hycall Brooks, he was interrogated by Charles Brooks, and his complaint was disregarded.

32.

On October 4, 2022, Mrs. Cooper was demoted from her position as Housing Director and appointed as BHA's inaugural Director of HUD Compliance. Mrs. Cooper's new position came with no job description.

33.

At the time of this job change, Baker advised Mrs. Cooper that she was now responsible for the SEMAP report for BHA, which was already past due, as indicated by Baker in a staff meeting the day prior to Mrs. Cooper's demotion.

34.

Baker attempted to blame Mrs. Cooper for mishandling the SEMAP report he was obligated to manage. The following email from HUD's Field Office Representative, Jessica Shaw, to Baker shows that he claimed the SEMAP report was not completed "because Ms. Cooper failed to do so":

---

**Christina Curry**

| | |
|---|---|
| From: | Shaw, Jessica F <Jessica.F.Shaw@hud.gov> |
| Sent: | Wednesday, October 5, 2022 4:41 PM |
| To: | William Baker; Kenner, Robert L; Miller, Christina S; Barnett, James E; LeSure, Tosha R |
| Cc: | Charles Brooks; Hycall Brooks; Kevin Kimble; Christina Curry |
| Subject: | RE: Notice PIH – 2018-16 (9-28, 2018) 24 C.F.R. 5.110 |
| Attachments: | <External Message>  ; <External Message>  New Executive Director needs rights to WASS. Please advise.; RE: <External Message>  PIC/EIV Access for new users, administrative roles; Joyce Cooper; Utilizing Proper Chain of Command and SEMAP; Signed Brunswick SEMAP 2020.pdf; Signed Brunswick SEMAP 2021.docx; FW: <External Message>  EIV/PIC |

Hello Mr. Baker,

I received the email below from your staff stating that your PHA's SEMAP was late due to the FO failure of granting new staff members access to eLOCCS.  The procedure of reporting SEMAP scores are in the Secure Systems (PIC).  Since August 9, 2022, Mr. Baker had access to the Secure Systems (attachment 1).  On July 21, 2022, Mr. Bradley asked the FO for access to WASS for the new ED (attachment 2) and when Ms. Alice returned from vacation, that request was granted.  Ms. Cooper had access to the Secure Systems since April 2, 2015 (attachment Joyce Cooper)and if she needed further access to perform SEMAP, Ms. Cooper should have contacted Ms. Alice like she did yesterday.

On July 26, 2022, the FO had a detailed conversation with the you concerning the chain of command and the SEMAP waiver.  Originally, you contacted Mr. Barnett to ask for a SEMAP waiver and I called the HA to discuss the disturbing SEMAP news and to give you direct contact information for me or my supervisor Christina Miller because your HA is in our portfolio.  Mr. Baker, you stated that the SEMAP was not performed because Ms. Cooper failed to do so.  I told you that your PHA was going to be SEMAP troubled for that miscommunication (attachment utilizing proper chain of command and SEMAP).

---

35.

Blaming Mrs. Cooper for the failure to timely submit the SEMAP report is another act of retaliation because it was intended to chill her exercise of EEOC and § 1981 rights and give Baker cause to terminate her employment.

36.

Days later, Baker shifted his blame for the SEMAP report to another white BHA employee.

37.

On October 11, 2022, Mrs. Cooper gave Howes a formal complaint, in which she notified HR of her retaliatory demotion and her belief that Baker's actions and the comments previously made by Sorrells and Bailey were discriminatory acts.

38.

Also on October 11, 2022, Charles Brooks interrogated Mr. Cooper a second time about his job duties and his safety on property. Mr. Cooper explained to Brooks that he had legal representation and would not be subjected to an interrogation without counsel.

39.

On October 12, 2022, Baker suspended Mr. Cooper for 30 days. Although the letter claimed it was paid administrative leave for Mr. Cooper's safety, which was approved by the Board, the suspension was made in retaliation to his complaints.

40.

On October 21, 2022, Mrs. Cooper found a termination letter for Mr. Cooper drafted by Attorney Charles Brooks. All of the reasons listed allegedly supporting Mr. Cooper's termination were false and fabricated and his termination constituted another act of retaliation by the Board.

41.

On October 25, 2022, Baker forwarded an email chain to Mrs. Cooper and several other BHA directors. This chain indicated that Baker told BHA's counsel on October 8, 2022 that he would be asking "all current staff members of the [BHA] to tender their resignation and reapply."

42.

On October 31, 2022, Mr. Cooper was interviewed for approximately 10 hours by BHA's counsel, Attorney Catherine Bowman, regarding the above-mentioned complaints. At no point was Mr. Cooper provided any updates on the investigation into his racial discrimination claims.

43.

Later that day, Baker called Mrs. Copper and confirmed that he planned to ask all BHA staff to resign. Baker confirmed that no employee would have a choice in resigning and that he would fire her for insubordination if she refused to resign. Baker then proceeded to explain to Mrs. Cooper that if she quit, he could hire her

as a consultant and would pay her more money if she agreed to pay him a 15%

kickback. At all times, Mr. Baker was acting within the scope of his delegated or

statutory authority on behalf of the Brunswick Housing Authority.

44.

Mrs. Cooper never agreed to Baker's terms and Baker ultimately decided

against requiring each employee to resign.

45.

On October 31, 2022, Mrs. Cooper was interviewed by Bowman to

investigate the claims made by her and Mr. Cooper.

46.

On November 4, 2022, Mrs. Cooper was interviewed, again, for

approximately 8 hours by Bowman regarding the complaints made by her and Mr.

Cooper.

47.

On November 6, 2022. Mrs. Cooper was again interviewed by Bowman for

approximately 3 additional hours. No results of the racial discrimination

investigation were ever shared with the Coopers by BHA.

48.

In November 2022, without any reprimands or poor performance reviews,

Mrs. Cooper was demoted to HUD Compliance Officer, stripping her of her

Director title and duties in retaliation for her complaints.

49.

When Mr. Cooper returned to work on November 14, 2022, BHA further retaliated against him by having Baker instruct him to stand in the hallway while a decision was made. When Mr. Cooper asked Baker what decision was being made, Baker never gave an answer.

50.

After waiting two hours, Baker told Mr. Cooper that his suspension would be extended for another week and to return on the following Friday.

51.

Thereafter, Mr. Cooper received a letter from Baker instructing him that BHA was continuing his suspension.

52.

On November 18, 2022, Mr. Cooper returned to work as instructed and was again asked to come back the following Monday.

53.

When Mr. Cooper returned to work on November 21, 2022, Baker terminated his employment and demanded that Mr. Cooper immediately exit the property. BHA never intended to return Mr. Cooper from his suspension, and Mr. Cooper did not work again once he was suspended on October 12, 2022.

54.

In a desperate attempt to make Mr. Cooper's termination appear unconnected to his complaints, Baker notified HUD director, Jessica Shaw, and Brunswick's Mayor, Cosby H. Johnson, of the comments Sorrells made against Mr. Cooper and the complaints the Coopers collectively made against Sorrells.

55.

Although Sorrells made her comments during the September 14, 2022 Board meeting, Baker waited until November 28, 2022, 7 days after he terminated Mr. Cooper, to formally complain to anyone.

56.

Throughout December of 2022, Mrs. Cooper was accused of making several statements she never made, including that contractor Mitch Edwards was harassing her via phone and email and that Howe was not qualified for her Human Resource position.

57.

On December 15, 2022, BHA issued Mrs. Cooper a cease and desist not to speak with BHA employee Shareka Walker, who had first-hand knowledge of racially discriminatory remarks made by Baker that Walker should not be transferred to work as the Administrative Assistant of Ronald Cooper when he was hired because he was the "white man."

- 14 -

58.

To cover up its racially charged, discriminatory behavior, BHA issued Mrs. Cooper a written reprimand on January 4, 2023 for harassment against Walker. The allegations of the written reprimand were false, and the written reprimand was rescinded on January 10, 2023 after Mrs. Cooper provided evidence refuting the allegations made against her.

59.

On January 18, 2023, Howes told Mrs. Cooper that Baker claimed Howes, Mrs. Cooper and Director of Finance Sharron Dyer needed to get ready for a class action lawsuit because Commissioner Pamela Bailey wanted Baker to fire BHA's "white women" because she did not want them running BHA.

60.

After months of subjecting the Coopers to disparate treatment, Baker was terminated for cause during the Board's March 8, 2023 meeting. BHA's contracts with the Brooks Law Firm and KBK Consulting were terminated immediately after Baker's termination.

61.

On or about March 9, 2023, Mrs. Cooper and Howes participated in a Zoom meeting with Commissioner Pamela Bailey and Commissioner Allen Booker. After the meeting was over, Commissioners Bailey and Booker remained on the

call.

62.

After Mrs. Cooper and Howes left the meeting, Bailey told Booker that BHA should pay Dr. Sabrina Nixon, a BHA employee with a pending lawsuit involving BHA, because they paid Mr. Cooper while he was on leave during his investigation. In an irritated tone, Booker responding by asking "so, they settled with the white man?"

63.

Throughout the Coopers' tenure with BHA, Baker and the Board subjected several Caucasian co-workers and contractors to racial harassment.

64.

On March 10, 2022, John Galego, a Caucasian who had worked for BHA for 15 years, announced his retirement. In his retirement letter, Galego indicated that he was retiring in part because Commissioners Bailey and Kitts' decision to allow racially charged comments to be stated during monthly board meetings created a hostile work environment for the management team.

65.

On April 13, 2022, Angela Stickland, a Caucasian woman who served as the Executive Director of BHA prior to Baker, noted in her letter of retirement that Bailey's combativeness and hostility was part of the reason she was retiring.

66.

On or about December 2022, Baker told Brian Dolan, the Director of the Boys and Girls Club/ Terrill Thomas Center, that he would teach him a lesson about African American history by dragging and hanging him after Dolan told Baker that he came into their facility "beating his chest". After this incident, Boys and Girls Club Board Chair Missy Nue advised BHA that they would no longer associate with BHA because of Baker.

67.

On March 10, 2023, BHI's Caucasian Director of IT, Bradley Skipper, filed an official complaint concerning Commissioner Booker based on racial comments made at the end of the Zoom meeting on March 9, 2023.  Finance Specialist Gwen Williams also lodged a complaint stating that she was offended by Commissioner Booker's racially degrading statements.  After these racial complaints were made against Commissioner Booker, BHA ultimately promoted him to Chair.

## COUNT I: RACE DISCRIMINATION AND HARASSMENT IN VIOLATION OF 42 U.S.C. § 1981 AND THE EQUAL PROTECTION CLAUSE (VIA § 1983)

68.

The Coopers' employment with Defendant was a contract as that term is used in 42 U.S.C. § 1981.

69.

Defendant, via its employees acting under the color of state law with final

policy-making authority continually harassed the Coopers on the basis of their race and color, depriving the Coopers of their constitutional rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

70.

Defendant also discriminated against the Coopers in the terms and conditions of Mr. Cooper's employment by suspending him and later terminating him for fabricated reasons and by demoting Mrs. Cooper because of her race/color and complaints and then refusing to allow her to apply for the Human Resources Position, in violation of 42 U.S.C. § 1981, as enforced through Section 1983, and the Equal Protection Clause.

71.

BHA also refused to let Mrs. Cooper apply for a demotion to mitigate her damages, yet others were permitted demotions.  Instead, BHA fired Mrs. Cooper.

72.

As a result of Defendant's misconduct, the Coopers suffered mental and emotional distress including grief, shame, humiliation, embarrassment, anger, worry and disappointment.  The Coopers have suffered pecuniary loss, including lost wages and costs of seeking other employment.

73.

Defendant's actions were willful, wanton and intentionally directed to harm

the Coopers and/or were taken in reckless disregard of their federally protected rights.

74.

While discovery has not yet begun, Plaintiffs are pleading Section 1981 through Section 1983 based on Defendant's representation that it is a public entity.

75.

All of the actions stated above were taken under color of law and with the express authority of the BHA or through its final policy makers.

## COUNT II: SECTION 1981 RETALIATION (THROUGH § 1983)

76.

The Coopers incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

77.

The Coopers complained about the harassment and discrimination perpetrated by Defendant's employees and management.

78.

The Coopers suffered several adverse employment actions as a result of harassment, discrimination, and complaints about same.

79.

Mr. Cooper was falsely reprimanded and fired.

80.

Mrs. Cooper was demoted several times, put in positions far below her abilities, instructed to resign, instructed to demote herself, put in positions where she was no longer a director, not allowed to apply for positions in contravention of BHA policies to ensure her termination and BHA failed to respond to her inquiries concerning another position brought to her attention.

81.

No legitimate non-retaliatory reasons exist for Mrs. Cooper's treatment, reprimands, demotions, denied position application requests, requested resignation, or her ultimate termination.

82.

As a direct and proximate cause of the above-described unlawful employment practices, the Coopers suffered and continue to suffer the indignity of discrimination, harassment and retaliation, the invasion of the right to be free from discrimination, harassment and retaliation, great humiliation, emotional pain, mental distress, inconvenience, mental anguish and the entitled to attorneys' and witness' fees, costs and other compensatory damages pursuant to 42 U.S.C. § 1981 through 1983.

83.

All actions set forth above were taken as the formal or informal policy and practice of BHA or were performed by BHA's final policy makers.

84.

Plaintiffs' claims brought pursuant to Sections 1981 are enforced through 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, the Coopers pray as follows:

(a)    That process issue against Defendant as required by law;

(b)    That the Coopers have judgment against Defendant on all counts, in an amount to be determined at trial;

(c)    Plaintiffs be awarded back pay, reinstatement or front pay, and compensation for lost benefits of employment, to the extent awardable under the Counts set forth above;

(d)    That the Coopers recover compensatory damages in an amount reasonable and commensurate with their economic loss suffered as a result of Defendant's harassment, discrimination, retaliation and the pain and emotional distress imposed upon them by Defendant's intentionally discriminatory acts;

(e)    That Plaintiffs recover pre-judgment interest from Defendant;

(f)     That Plaintiffs recover their attorneys' fees and costs from Defendant incurred in bringing this action;

(g)     That a jury trial be had as to all issues in this Complaint; and

(h)     For all such other and further relief as is deemed just and proper by this Court.

Respectfully submitted this April 15, 2025.

By:     _/s/ Andrew Y. Coffman_____
Andrew Y. Coffman
Georgia Bar No. 173115
James D. Dean
Georgia Bar No. 696656
1355 Peachtree St NE, Ste. 2000
Atlanta, GA 30309
(404) 873-8000 (telephone)
acoffman@pcwlawfirm.com
jdean@pcwlawfirm.com

ATTORNEY FOR PLAINTIFFS